IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 9, 2002 Session

## STATE OF TENNESSEE v. WENDY STEVENS

**Direct Appeal from the Circuit Court for Williamson County**
**No. II-401-124     Timothy L. Easter, Judge**

---

**No. M2001-02464-CCA-R3-CD - Filed September 5, 2002**

---

The appellant, Wendy Stevens, pled guilty in the Williamson County Circuit Court to one count of forgery involving a value of more than $500 but less than $1,000, and one count of fraudulent use of a credit card involving a value of more than $500 but less than $1,000, both Class E felonies. The trial court sentenced the appellant to eighteen months incarceration in the Tennessee Department of Correction for each offense, but immediately suspended the sentence in favor of supervised probation. On appeal, the appellant complains that the trial court erred by failing to grant her judicial diversion. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOE G. RILEY and ALAN E. GLENN, JJ., joined.

Judson Wheeler Phillips, Franklin, Tennessee, for the appellant, Wendy Stevens.

Paul G. Summers, Attorney General and Reporter; Christine M. Lapps, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Lee Dryer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

On December 6, 2000, Joan Benton invited the appellant to a prayer meeting at her home. The meeting lasted from 8:00 a.m. until 9:30 a.m. Approximately one and one-half hours after the conclusion of the prayer meeting, Benton noticed that her credit card was missing from the kitchen. Benton assumed she had lost the card until, two weeks later, she received a credit card bill which reflected unauthorized charges totaling almost five thousand dollars. All of the unauthorized charges were made after Benton discovered the card was missing. An investigation determined that the appellant had taken the credit card and incurred the charges. There were fifteen different

unauthorized charges on the bill; however, only one of the charges occurred in Williamson County. All other charges occurred in Davidson County. The Williamson County offense resulted from the appellant's charges of $768.46 worth of merchandise at Cool Springs Target in Franklin.

As a result of the charges, the appellant pled guilty in the Williamson County Circuit Court to forgery involving a value of more than $500 but less than $1,000, and to fraudulent use of a credit card involving a value of more than $500 but less than $1,000.[1] The plea agreement left all sentencing determinations up to the discretion of the trial court.

At the sentencing hearing, Benton testified to the facts underlying the offenses. Benton related that the appellant was the only individual to go into her kitchen during the prayer meeting, after which meeting she discovered the credit card missing. Additionally, a security camera at Target recorded the appellant using the card. Benton told the court that she felt "extremely betrayed and violated" as a result of the offenses. She also observed that the appellant did not seem destitute at the time of the offenses. Notably, the appellant lived in a "lovely home" with a swimming pool, drove a nice vehicle, and sent her children to private school. Benton informed the court that the appellant's previous attorney, John Nefflin, had contacted Benton and her husband in an effort to resolve the case "out of court." One week prior to trial, the Bentons received a letter which the appellant denoted as her "attempt to apologize." Benton further related that the appellant had not been prosecuted for the Davidson County offenses and she thought it unlikely that the Davidson County District Attorney General's office would initiate charges against the appellant.

Kim Camp testified on behalf of the appellant. Camp related that she had known the appellant for eight or nine years and considered her to be a "faithful, loving friend." Camp indicated that the appellant had a troubled marriage which ended in a bitter divorce. Nevertheless, she stated that the appellant remained concerned about providing a "stable environment" for her two children. Camp also knew that, prior to these offenses, the appellant's mother had passed away and the appellant had witnessed a horrendous car accident in which the appellant's daughter, Haley; the appellant's best friend, Alice Freeman; and Freeman's son, Will, were involved. The crash ultimately claimed the life of Freeman. Camp asserted that these events were "traumatic" for the appellant, rendering her "emotionally devastated." Camp theorized that the trauma of these events compelled the appellant to return to past patterns of unwise behavior. Regardless, Camp asserted that the appellant recognized her wrongdoing and was seeking help from friends, doctors, and counselors. She maintained that the appellant had recently obtained a "dream" job and had moved into a good neighborhood. Camp conceded that, at the time of the offenses, the appellant was not destitute and was living beyond her means. Camp further admitted that the appellant had also previously stolen her credit card and made unauthorized charges on two occasions.

Next, the appellant called David Pratt, the probation officer who prepared her presentence report. Pratt related that the appellant owed $768.46 restitution to Citibank for the

---

[1] We note that there is no guilty plea transcript in the record before this court.

Williamson County case. In response, the appellant immediately tendered to Pratt a certified check for the full restitution amount.

The appellant also presented the testimony of Joe Chilberg, a long-time friend of the appellant. Chilberg testified that the appellant's life had been tumultuous for two to three years prior to the incident, and the appellant was "more than remorseful." He had recommended to the appellant that she seek counseling and soon thereafter the appellant followed Chilberg's advice.

The appellant testified on her own behalf. She related that she was a thirty-eight-year-old mother of two children. She explained that she had recently accepted a position as the development director for the Nature Conservancy of Tennessee. The appellant indicated that she had been through a difficult divorce and lost her mother and her best friend, all within the last few years. She stated that she considered Benton to be a friend and, on December 6, 2000, went to Benton's house to pray. She claimed that, during the meeting, she began to feel "anxious" and "pressured" and took Benton's credit card. She used the card to purchase necessities and Christmas presents for her family and other friends. The appellant admitted that her behavior was "ridiculous" and "over the top." She further acknowledged that she was sorry and was seeking help. Contrary to Benton's testimony, the appellant contended that the reason her previous attorney, Nefflin, contacted the Bentons was to explain that the appellant was responsible for all of the unauthorized charges on the credit card. Moreover, the appellant maintained that she had been diagnosed with bipolar disorder and had previously taken anti-depressant medication. She also asserted that she wanted to get involved in a mental health inpatient program to help her understand why she committed these acts. Finally, she expressed her desire to make full restitution.

On cross-examination, the appellant told the court that, prior to her death, Freeman had obtained a credit card account in Freeman's name with an additional card issued to the appellant so the appellant could use the card in an emergency. However, the appellant confessed that, after Freeman was killed in the car accident, the appellant used the card to make "irrational" purchases, including the purchase of a chair for Freeman's husband. The appellant quickly asserted that Freeman's husband was reimbursed for the charges. The appellant further admitted that, while living in Maryland several years before these offenses, she took a credit card from "Mr. and Mrs. Chamberlain" and used the card without their prior approval. Additionally, she acknowledged that she had used the credit cards of two other friends, Camp and "Mr. and Mrs. Bach," without obtaining their permission.

Based upon the foregoing evidence, the trial court denied the appellant judicial diversion, noting that the appellant had an extensive history of this type of crime. The trial court then imposed a sentence of eighteen months supervised probation. The appellant now appeals the trial court's denial of judicial diversion.

## II. Analysis
The appellant claims that the trial court erred by denying her judicial diversion. With respect to judicial diversion, Tennessee Code Annotated section 40-35-313(a)(1)(A)(1997) provides:

If any person who has not previously been convicted of a felony or a Class A misdemeanor is found guilty or pleads guilty to . . . a Class C, D or E felony, the court may, without entering a judgment of guilty and with the consent of such person, defer further proceedings and place the person on probation upon such reasonable conditions as it may require, and for a period of time . . . not more than the period of the maximum sentence of the felony with which the person is charged.

We observe that "judicial diversion is similar in purpose to pretrial diversion and is to be imposed within the discretion of the trial court subject only to the same constraints applicable to prosecutors in applying pretrial diversion under [Tennessee Code Annotated section] 40-15-105." State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992).

On appeal, "[t]he lower court's denial of judicial diversion is subject to reversal on appeal only if that court abused its discretion." State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998). As a consequence, "we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision." Id. Moreover, "[t]he same guidelines are applicable in diversion cases as are applicable in probation cases, but they are more stringently applied to those seeking diversion." State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

The trial court must consider all of the following factors in determining whether to grant the appellant judicial diversion:
(a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the status of the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice – the interests of the public as well as the accused.

State v. Lewis, 978 S.W.2d 558, 566 (Tenn. Crim. App. 1997). Additionally, the trial court may consider the appellant's "attitude, . . . behavior since arrest, . . . home environment, current drug usage, emotional stability, past employment, general reputation, family responsibilities, and the attitude of law enforcement." Id. The record must reflect that the trial court has taken all of the preceding factors into consideration. Electroplating, 990 S.W.2d at 229. Furthermore, "[t]he court must explain on the record why the [appellant] does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others." Id.

The trial court thoroughly considered the factors concerning judicial diversion, remarking that, "at first blush," the appellant appeared to be an appropriate candidate for diversion. The court noted the following factors weighing in favor of the granting of judicial diversion: the appellant's amenability to correction, her social history, her lack of prior criminal convictions, her good attitude toward dealing with her problems, her family responsibilities, the attitude of law

enforcement, her acknowledgment of responsibility, and her remorse. See Lewis, 978 S.W.2d at 566. Furthermore, the court noted that the appellant's "[g]eneral reputation seems to be good, other than she steals from her friends." The court also observed that the appellant's mental and physical health "weighs both ways," and concluded that the appellant's emotional stability was questionable. In turning to the factors weighing against the grant of judicial diversion, the trial court placed significant weight on the fact that the appellant abused a position of private trust and also recognized the need for deterrence, specifically noting that the appellant had previously committed acts similar to the instant offenses. Ultimately, the trial court found that to allow the appellant to continue this type of behavior without sanction would not serve the ends of justice for the appellant or society.

The appellant complains that the majority of the factors to be considered in determining whether to grant judicial diversion weigh in her favor; therefore, the trial court abused its discretion by denying diversion. Specifically, the appellant argues that

> [a]t the hearing, proof was introduced th[at] the Appellant's name was on [Freeman's] card . . . and she was a joint card holder. As far as the other incidents [of unauthorized credit card usage] are concerned, the record is mostly silent. What is obvious from the record is that no criminal charges were ever filed. Perhaps the other parties forgave her for what she allegedly did or perhaps gave her permission after the fact. The record is silent in this regard and the Court can not draw facts out of thin [air].

We acknowledge that much of the appellant's history is positive and, at first blush, indicates her favorable candidacy for judicial diversion. However, we agree with the trial court that the need for deterrence is a significant factor in this case. Our supreme court recently outlined several factors to be considered in determining when deterrence is correctly employed to deny probation. State v. Hooper, 29 S.W.3d 1, 10-12 (Tenn. 2000). We note that "[d]eterrence in judicial diversion cases is to be considered in the same manner as it is in probation cases." State v. Parker, 932 S.W.2d 945, 959 (Tenn. Crim. App. 1996). However, the applicable guidelines "are more stringently applied to diversion applicants." State v. Holland, 661 S.W.2d 91, 93 (Tenn. Crim. App. 1983). The following factors may indicate a need for deterrence:

> (1) the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior [and]
>
> (2) the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions.[2]

Hooper, 29 S.W.3d at 11-12. From the appellant's own testimony, it is clear that she committed the instant offenses intentionally, admitting that she was concerned about providing Christmas presents.

---

[2] These are not the only factors applicable in deterrence cases. See Hooper, 29 S.W.3d at 10-12. However, these are the only factors applicable in the instant case.

Additionally, at the sentencing hearing, Camp conceded that the appellant took her credit card and used it on two occasions without Camp's permission. Moreover, the appellant confessed that she used the credit cards of Mr. and Mrs. Chamberlain, Mr. and Mrs. Bach, and Camp without their permission.[3] Furthermore, the appellant testified that Freeman obtained a credit card in Freeman's name with an additional card for the appellant to use only in case of emergency. After Freeman's death, the appellant admitted that she made "irrational" and "wrong" purchases, specifically buying a chair for Freeman's husband. Like the trial court, we find disturbing the appellant's frequent return to this same criminal behavior. Our supreme court has noted:

> Repeated occurrences of the same type of criminal conduct by a defendant generally warrant a more emphatic reminder that criminal actions carry consequences. Although the [probation] statute speaks in terms of general deterrence, it has been recognized that general deterrence is possible only after specific deterrence has first been achieved.

Hooper, 29 S.W.3d at 12.

Additionally, the trial court found particularly "offensive" the appellant's abuse of a position of private trust when, under the guise of a friend seeking "spiritual healing," the appellant entered Benton's home as a guest and stole from her friend. An abuse of private trust is a valid concern in determining an appellant's suitability for judicial diversion. See State v. Marsha L. McClellan, No. E2000-02373-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 292, at *20 (Knoxville, Apr. 19, 2001); State v. Danielle L. Walker, No. E2000-00578-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 235, at *11 (Knoxville, Mar. 29, 2001). Thus, we conclude that the trial court did not abuse its discretion by denying judicial diversion.

### III.  Conclusion

Finding no error, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE

---

[3] See Tenn. Code Ann. § 39-14-118(a) (1997) ("[a] person commits the crime of illegal possession of a credit or debit card who, knowing the person does not have the consent of the owner or issuer, takes, exercises control over or otherwise uses such card or information from such card.")